UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ALAN SMITH,

        Plaintiff,                               Civil Action No. 13-CV-10774

vs.                                            HON. MARK A. GOLDSMITH

LEXISNEXIS SCREENING
SOLUTIONS, INC.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTIONS FOR ATTORNEY FEES AND COSTS (Dkts. 61, 67)**

**I. INTRODUCTION**

Plaintiff David Alan Smith brought this case pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and obtained a favorable jury verdict awarding him $75,000 in compensatory damages and $300,000 in punitive damages. On Defendant's motion, the Court reduced the punitive damages award by half — to $150,000 — on constitutional grounds. Under FCRA, in addition to actual or punitive damages recovered, a defendant is also liable to a successful plaintiff for the costs of the action together with reasonable attorney fees. Id. §§ 1681n(a)(3), 1681o(a)(2). Pursuant to the statute, Plaintiff has filed motions for attorney fees and costs (Dkts. 61, 67). As detailed below, the Court will grant the motions in part, sustaining some of the defense objections and also allowing Plaintiff to supplement his submissions to substantiate amounts that are not sufficiently documented.

**II. ANALYSIS**

Determining what constitutes a reasonable fee begins with a simple calculation: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

1

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 582 (9th Cir. 2010) (applying the lodestar analysis to a FCRA case); Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (same). The resulting product — the "lodestar" — carries a strong presumption of reasonableness. Pennsylvania v. Del. Valley Citizens' Council for Clear Air, 478 U.S. 546, 565 (1986). The requesting party is responsible for "submit[ting] evidence supporting the hours worked and rates claimed." Hensley, 461 U.S. at 433. Defendant challenges both the reasonableness of the hours and the rate. Certain objections are well-taken; others are not.

### A. Plaintiff's First Motion for Attorney Fees and Costs (Dkt. 61)

#### 1. Hours Expended

Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from the lodestar analysis. Hensley, 461 U.S. at 434; see also Paeth v. Worth Twp., 483 F. App'x 956, 966 (6th Cir. 2012) ("The district court also offered adequate explanation for why it reduced the hours worked, explaining that it found some of the hours billed excessive, redundant, or unnecessary, all factors that allow a district court to find hours not to be reasonable."). Defendant's general argument is that Plaintiff's counsel's time entries should be reduced, because they "reflect over-lawyering or over-billing." Def. Resp. at 11 (Dkt. 62). The Court disagrees with Defendant as to the bulk of the challenged entries, and concludes that, except as detailed below, the expenditures of time were reasonable.

Plaintiff's counsel attributes approximately 75 hours in attorney time — 66 hours for attorney John Soumilas and 8.8 hours for attorney Lauren KW Brennan — plus ten hours of

paralegal time to trial preparation.[1]  See Ex. 1 to Soumilas Decl. at 3 (cm/ecf page) (Dkt. 61-2). Trial in this matter lasted approximately four days, just two-and-a-half of which involved picking and impaneling the jury, opening and closing arguments, presenting proofs, and instructing the jury; the remainder of that time was associated with jury deliberation.  During trial, there was testimony from just four witnesses.  The Court agrees with Defendant that Mr. Soumilas's 66 hours for trial preparation is excessive for such a relatively short trial.  Given the relatively small number of witnesses and the straightforward issues involved, reasonable preparation for trial should not have consumed more than 32 hours.

The Court also agrees with Defendant's argument that Plaintiff's counsel spent excessive time — 21.2 hours — propounding document requests, reviewing objections, and reviewing the documents produced.  Def. Resp. at 11.  Given that the document requests and objections were standard, and that the total production consisted of some 161 documents (of which 85 pages were pay records that were largely irrelevant to the crux of the case), 15 hours should have been sufficient to perform these undertakings, even taking into account additional tasks (such as preparation of the O'Connor affidavit) included in the time expended.  The Court will deduct two hours each from Ms. Brennan and Geoffrey Baskerville, with the balance (2.2) deducted from Mr. Soumilas's time.

The Court will also sustain Defendant's objection to Ian Lyngklip's billed time with respect to a settlement conference.  See id. at 13.  Mr. Lyngklip's contention that he spent 14 hours traveling to and attending an unspecified settlement conference appears excessive, particularly considering that he is local counsel.  Lyngklip Decl. at 2 (cm/ecf page) (Dkt. 61-8). Defendant asserts that the conference lasted less than four hours and reimbursement for those

---

[1] These hours are distinct from the hours Mr. Soumilas billed to the actual trial itself.  See Ex. 1 to Soumilas Decl. at 3 (cm/ecf page) (Dkt. 61-2) (attributing 32.3 hours to the trial).  The Court does not disturb those hours.

four hours would be appropriate. Def. Resp. at 13. Nothing has been offered to substantiate Mr. Lyngklip's claimed time or to rebut Defendant's objection. Accordingly, the Court will permit Mr. Lyngklip to recover five — four for the conference and one hour allowed for travel to and from the conference — of the 14 hours claimed.[2]

The Court rejects the balance of Defendant's arguments for reducing hours. Defendant's contention that 32 hours billed for depositions in this case — which included preparation, travel, and the actual taking or defending of the depositions — is excessive — on the theory that the depositions themselves took just nine hours in total — fails to appreciate that time spent preparing for a deposition may very well exceed the actual time spent in the deposition.[3] Id. at 12. Defendant's argument regarding time spent on the Court's October 15, 2014 conference suffers from the same flaw. See id. at 14 (suggesting that allowing eight, instead of ten, hours for a four-hour pre-trial conference "would be generous").

Moreover, Defendant's suggestion that attorney time on certain tasks should be disallowed just because the billing attorney did not appear at specified conferences, see id. at 12 (referring to Ms. Brennan's 1.3 hours on depositions even though she did not attend them), 13 (referring to Mr. Soumilas's 5.2 hours spent in connection with a December 2013 settlement conference despite not attending), 13-14 (referring to Mr. Baskerville's four hours and Ms. Brennan's 1.4 hours spent on settlement discussions and an August 2014 settlement conference

---

[2] The Court finds the remainder of Mr. Lyngklip's time entries to be reasonable. The 9.7 hours comes from a minimal .1 entry for each email received and read by Mr. Lyngklip through the life of the litigation. See Lyngklip Decl. at 2 (cm/ecf page). Furthermore, a three hour conference with Mr. Soumilas in advance of a settlement conference is not so excessive as to warrant the Court's interference. Id. at 1 (cm/ecf page).

[3] Indeed, Defendant's proposed reduction to just 15 hours permits counsel just six hours to prepare for three depositions, after accounting for time spent in the actual depositions. Def. Resp. at 12.

despite not attending), ignores that non-appearing attorneys may play a valuable and necessary behind-the-scenes role.

Defendant also argues that, because the October 17, 2014 submissions required by the Case Management Order (Dkt. 10) were "streamlined" versions of Plaintiff's initial July 21, 2014 submissions, 14.5 hours of associate time on the October 17 submissions was excessive. Def. Resp. at 14. The Court rejects this argument. Judging from Plaintiff's counsel's time records, the July 21 submissions consisted of the parties' proposed joint pretrial order, joint proposed jury instructions, a statement of claims and defenses, and a special verdict form; the October 17 submissions consisted of a neutral case summary, proposed voir dire, a stipulation of facts, and proposed jury instructions. Ex. 1 to Soumilas Decl. at 2-3 (cm/ecf pages). According to Plaintiff, many of these submissions were new, and some required multiple drafts with detailed revisions exchanged between the parties. Pl. Reply at 6 (Dkt. 64). While the October 15, 2014 conference with the Court may have narrowed the issues that the parties needed to revise and/or revisit, there were a number of submissions to be submitted to the Court — some of which did not appear to have been previously submitted — including a short brief setting forth the appropriate legal authority underlying each party's preferred version of the remaining disputed jury instructions. The Court-ordered brief required legal research and drafting, which took additional time.

Moreover, Defendant's argument that Plaintiff's post-trial briefing should be cut in half because it consisted largely of "cutting and pasting," as opposed to "researching and writing," is without merit. Def. Resp. at 16. It is certainly true that attorneys at a law firm specializing in consumer law are likely familiar with many of the leading cases and strategies available to plaintiffs who file consumer-related claims. However, applying precedents and principles to the

5

context-specific facts of each case cannot be accomplished through a rote "cut and paste" process. In addition, Defendant also challenges Plaintiff's counsel's 20.3 attorney hours — ten hours attributed to Mr. Soumilas and Ms. Brennan each — on Plaintiff's Supplemental Brief regarding Rule 50(a) and the entry of judgment, because the resulting brief was approximately six pages, only half of which contained legal argument. Id. While the end product of an attorney's billed time is something to bear in mind, focusing exclusively on that end product — in this case, a short brief — risks ignoring or otherwise diminishing extensive time attorneys may legitimately spend on exploring research avenues that do not necessarily translate into voluminous pages in a brief.

Accordingly, with the stated exceptions above — the reduction of Mr. Soumilas's trial preparation time from 66 to 32 hours, the reduction of time allowed for written discovery from 21 to 15 hours, and the reduction of Mr. Lyngklip's hours for traveling and attending a settlement conference from 14 to five hours — the hours claimed by Plaintiff's counsel were reasonably expended and may be included within the lodestar calculation.

### 2. Reasonableness of the Rates Claimed

A reasonable hourly rate is measured against "the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004). The fee should be "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Id. (quoting Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999)).

Plaintiff's counsel requests an hourly rate of $423 for Mr. Soumilas and Mr. Baskerville, $180 for Ms. Brennan, and $148 for paralegal work. Pl. Mot. at 15. These proposed rates reflect

a 10% reduction from counsel and staff's standard rates, accounting for differences in the Philadelphia and Detroit legal markets, as demonstrated by the 2010 National Law Journal Billing Survey. Id. at 14-15; see also 2010 National Law Journal Billing Survey, Ex. 3 to Soumilas Decl. (Dkt. 61-4). Plaintiff's counsel submits that these rates are commensurate with what experienced consumer law attorneys in Michigan charge — approximately between $300 to $500 per hour — as evidenced by the 2014 Attorney Income and Billing Rate Summary Report issued by the State Bar of Michigan (hereinafter "State Bar Report"). Pl. Mot. at 15; see also 2014 State Bar Report, Ex. 4 to Soumilas Decl. (Dkt. 61-5). Plaintiff's counsel further requests an hourly rate of $400 for Mr. Lyngklip. Pl. Mot. at 15. These rates appear reasonable.

While Defendant challenges Plaintiff's reliance on each of the sources, proposing alternative hourly rates of $275 for Mr. Soumilas, Mr. Baskerville, and Mr. Lyngklip, and $190 for Ms. Brennan, Def. Resp. at 7, Defendant's arguments are unconvincing.[4] Because the local market is the Eastern District of Michigan, Defendant would disregard the National Law Journal Survey in favor of the State Bar Report. Id. at 5-6. However, the National Law Journal Survey identifies each surveyed firm by its market, and Plaintiff's counsel relies on the survey to examine the differences among markets to come up with an appropriate downward reduction that

---

[4] Defendant agrees with Plaintiff's counsel's proposed rate for work performed by paralegals, although Defendant mistakenly states that rate to be $165. Compare Def. Resp. at 7 n.2 (suggesting Plaintiff's counsel requested a rate of $165 per hour for paralegals), with Pl. Mot. at 15 (requesting $148 for paralegal work); Soumilas Decl. at 3, 5 (Dkt. 61-1) (same). The Court proceeds on the assumption that the $148 figure is the correct one, because that is the number contained in Mr. Soumilas's declaration as part of his lodestar analysis, see Soumilas Decl. at 3, 5, and that Defendant does not object to that number, given that it is lower than the number to which Defendant concurs.

accommodates the relevant market — Detroit — where this action was brought. See Pl. Mot. at 14-15. This is an appropriate use of a national survey.[5]

In any event, Plaintiff's counsel's proposed rate of $423 does fall just above the 75th percentile for consumer law lawyers in Michigan, according to the State Bar Report. See 2014 State Bar Report at 6 (identifying the billing rate for 75th percentile of consumer law lawyers as $400). Placing Plaintiff's counsel slightly above the 75th percentile seems reasonable in light of counsel's experience and the firm's overall reputation and specialty in consumer law practice.[6] Plaintiff's counsel's skill in litigating these types of cases is evidenced by Plaintiff's favorable jury verdict, awarding both actual and punitive damages, further demonstrating that an hourly rate slightly higher than the 75th percentile is appropriate. Finally, Mr. Lyngklip's hourly rate of

---

[5] The Court agrees with Defendant that the report of Abraham Reich, Co-Chair and Partner at Fox Rothschild, LLP, is not relevant, as it does not provide any information about the Detroit market. See Def. Resp. at 5; see also Reich Report, Ex. 2 to Soumilas Decl. (Dkt. 61-3).

[6] In determining the predicate hourly rate that forms the basis for the lodestar fee award, courts may consider the following:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 349 n.8 (6th Cir. 2000) (quoting Reed, 179 F.3d at 471 n.3).

$400 also appears reasonable in light of the State Bar Report and his specialty in consumer law for approximately the last 15 years. See Lyngklip Decl.[7]

The Court declines Defendant's invitation to ignore the mean rate for consumer law specialists contained in the State Bar Report in favor of the mean rate for general civil litigation. Def. Resp. at 6-7.[8] While Defendant contends that the consumer law specialist sample is too small to provide an accurate benchmark, id., the number of lawyers surveyed (44) appears adequate to provide a reliable estimate of what lawyers practicing in that area earn, see 2014 State Bar Report at 6. Aside from a brief citation to a case in which the court declined to adopt the consumer law figures because of the sample size, Defendant offers no reason for why the number of lawyers surveyed is too small to provide a reliable estimate. See Def. Resp. at 6-7. Nor does Defendant provide any explanation for why the more general "civil litigation" category is the appropriate substitute benchmark. As Defendant itself recognizes, the case it cites, Hazzard v. Schlee & Stillman, LLC, No. 13-10038, 2014 WL 117411, at *3 (E.D. Mich. Jan. 13, 2014), report and recommendation adopted by 2014 WL 634205 (E.D. Mich. Feb. 18, 2014), considered the billing rates for other specialties, namely "lawyers with reasonably comparable (or greater) levels of skill, including criminal lawyers and employment lawyers." See Def. Resp. at 7. Absent concrete evidence to the contrary, the State Bar Report data for consumer law lawyers is likely the most accurate representation of what such lawyers in this market charge.[9]

---

[7] The Court also sustains the hourly rate requested for Ms. Brennan, given that the requested rate is actually lower than that proposed by Defendant.

[8] Actually, the mean rate for general civil litigation lawyers is slightly higher than what Defendant proposes, at $290; the $275 figure appears to be the median value. See 2014 State Bar Report at 6.

[9] The alternative method by which Defendant reaches the $275 figure is equally unpersuasive. Defendant compiles the average of the three hourly rates approved in three cases Plaintiff cited as examples of the lodestar analysis in his motion. Def. Resp. at 3-4 n.1. In the first of these

### 3. Costs Are Not Limited to Those Enumerated in 28 U.S.C. § 1920

Plaintiff's counsel also requests reimbursement for costs incurred in the litigation of this suit. See Pl. Mot. at 16; Ex. 5 to Soumilas Decl. (Dkt. 61-6). Defendant challenges three categories of these costs: (i) travel; (ii) postage and shipping; and (iii) research/records. Def. Resp. at 17. The crux of the disagreement amounts to whether the "costs of the action" recoverable under FCRA are limited to costs as defined by 28 U.S.C. § 1920. Def. Resp. at 17; Pl. Reply at 9-10. The Court concludes that they are not.

Many circuits — including this one — have found that an award of "reasonable attorney fees" "include[s] the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Northcross v. Bd. of Educ. of Memphis City Sch., 611 F.2d 624, 639 (6th Cir. 1979), abrogated on other grounds by Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987); Gradisher v. Check Enforcement Unit, Inc., No. 1:00-CV-401, 2003 WL 187416, at *8 (W.D. Mich. Jan. 22, 2003) (statutes authorizing award of attorney fees permit recovery of "expenses not defined as 'costs' in the costs statute, if they are of a type billed separately to the client"); see

---

cases, Haddad v. Charles Riley & Assocs., Inc., No. 09-12597, 2011 WL 2581918, at *3 (E.D. Mich. June 21, 2011), counsel requested an hourly fee of $265, which the court approved as reasonable. In Hazzard, the second of the three cases, the court declined to rely on the consumer law data provided in the 2011 version of the State Bar Report because of the small sample size, and discounted the requested hourly rate of $425 to $300, commensurate with what other specialty lawyers earned. Hazzard, 2014 WL 117411, at *3. As explained, supra, the Court elects not to adopt that approach. The last case, Zontini v. Merchant Recovery Servs., Inc., No. 2:12-cv-14912, 2013 WL 5640125, at *2 (E.D. Mich. Oct. 15, 2013), found the requested $400 rate "to be fairly high," but did not provide any accompanying explanation for why the rate was too high, or why the actual rate (determined by breaking down the actual fee requested by the number of hours counsel billed) of $270 was more reasonable. Id. Using the average of just these three cases appears to be an arbitrary method of calculation, particularly when a more methodical approach — the use of survey data found in the respected State Bar Report — is readily available.

10

also Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 580-582 (9th Cir. 2010) (reasonable attorney fees provision in FCRA includes recovery of certain non-taxable costs).

Such expenses may include travel, reasonable photocopying, computer-assisted research, and postage and courier services. Northcross, 611 F.2d at 639 (travel and reasonable photocopying); Smith v. Serv. Master Corp., 592 F. App'x 363, 367-368 (6th Cir. 2014) (describing the uncertainty within the Sixth Circuit as to whether costs of electronic research should be separately awarded, and declining to adopt "an absolute rule that the cost of computer research is or is not recoverable"); Fleming v. Bhd. of Maint. of Way Emps. Div. of Int'l Bhd. of Teamsters, No. 08-11457, 2011 WL 900036, at *4 (E.D. Mich. Mar. 14, 2011) (allowing computer-assisted research); Gradisher, 2003 WL 187416, at *8 ("Courts have found that expenses ordinarily charged to clients include photocopying, travel, telephone costs, postage, and computer-assisted legal research."); Grove, 606 F.3d at 580 (travel, courier, and copying costs).[10] Although Defendant claims that courts in the Third Circuit follow a different practice, by considering those costs to be part of an attorney's overhead and subsumed within the charged hourly rate, see Def. Resp. at 17, the Court rejects that approach as inconsistent with the Sixth Circuit practice described above.

---

[10] Defendant cites to one relevant case within the Sixth Circuit denying as recoverable the same types of non-taxable costs discussed here. Def. Resp. at 17 (citing to Thompson v. Quorum Health Res. LLC, No. 1:06-CV-168, 2010 WL 2044542 (W.D. Ky. May 21, 2010)). However, that case found that such costs were not recoverable under 28 U.S.C. § 1920. See Thompson, 2010 WL 2044542, at *4. Notably, Thompson did recognize that travel expenses were recoverable as attorney fees. Id. at *6. As for shipping, postage, and research fees, the Thompson court did not appear to acknowledge or even address whether these costs were also recoverable as attorney fees. See id. at *6-8. Defendant's citations to other Sixth Circuit cases are not relevant, as the application for an award of attorney fees was denied in one, Wyandotte Sav. Bank v. N.L.R.B., 682 F.2d 119, 120 (6th Cir. 1982), and the plaintiff moved only for costs and related expenses, not attorney fees, in the other, King v. Gowdy, 268 F. App'x 389, 389-390 (6th Cir. 2008). Def. Resp. at 17.

Defendant also asserts that the challenged charges were not properly documented, and recovery is precluded on those grounds, as well. Id. at 18. The Court shares Defendant's concerns. Plaintiff's counsel's expense sheet consists only of a cost breakdown by category, with the "travel" section further broken down by the event necessitating the travel. See Ex. 5 to Soumilas Decl. This is plainly insufficient to permit any meaningful review by either Defendant or the Court.

By way of example, while the Sixth Circuit permits recovery of electronic research fees, that recovery is limited to the actual cost of the online service "incurred for specific research directly relating to the case," when "the general practice in the local legal community is to pass those charges on to the client." Smith, 592 F. App'x at 368 ("If the lawyer or firm pays a blanket access fee, rather than per search, there is no reason to distinguish the on-line research cost from the cost of the books that at one time lined the walls of legal offices, which was treated as overhead."). Unlike here, it appears counsel in Smith provided specific entries documenting the electronic charges, which included the timekeeper, the date, a vague narrative (e.g., "Westlaw charges"), and the total charges incurred for that session. Id. at 369. While an explanation of the firm's internal billing practices permitted the Sixth Circuit to infer that the charges were specifically incurred in connection with the subject-litigation, it found the descriptions accompanying the charges insufficient to demonstrate that "each charge was reasonably related to the issues raised in the case." Id. Conversely, here, the Court has no information allowing it to address (i) whether the charges were incurred in connection with this particular litigation; or (ii) whether each charge was reasonably related to the issues raised. Similarly, the breakdown of costs for the remaining categories (postage/shipping and travel) fails to provide any detail as to how the charges were incurred.

Accordingly, the Court will defer considering Plaintiff's counsel's request for costs, subject to Plaintiff's counsel submitting an itemized list of charges — containing sufficient detail for the Court to determine that the charges were reasonably incurred in connection with this litigation — by January 8, 2016.[11] At that time, the Court will review the list of charges and make any necessary deductions. Failure to submit the appropriate supporting information may result in denial of the request for costs.

### B. Plaintiff's Supplemental Motion for Attorney Fees and Costs (Dkt. 67)

Litigation continued in this case after the submission of Plaintiff's original fee petition, necessitating additional time and resources for which Plaintiff's counsel also seeks reimbursement.

Plaintiff's counsel submits an additional 21.2 hours of work at the rates requested in the original fee petition. Suppl. Soumilas Decl. at 3 (Dkt. 67-1). Plaintiff's counsel further requests additional costs for travel to a mediation session and the mediation itself. Ex. 2 to Suppl. Soumilas Decl. (Dkt. 67-3). In response, Defendant "does not dispute the amount of time that Counsel spent on the August 6, 2015 mediation" as currently documented, nor does it dispute that it is liable for Plaintiff's share of the mediator fees. Def. Resp. to Pl. Suppl. Mot. at 2-3 (Dkt. 68). However, Defendant continues to protest the hourly rate requested, as well as Plaintiff's counsel's request to be separately reimbursed for travel expenses. Id.[12]

---

[11] The submission of individual receipts and invoices is not necessary, so long as the itemizations clearly state the amount and purpose of each charge.

[12] The Court again concludes that Defendant does not challenge the hourly rate requested for Ms. Brennan and for paralegal work ($180 and $148, respectively), Suppl. Soumilas Decl. at 3, given that Defendant's initial response agreed with the paralegal's rate (or, at least, a higher rate than actually requested) and proposed a higher rate for Ms. Brennan, and Defendant's supplemental response reiterates that position. Def. Resp. at 7; Def. Resp. to Pl. Suppl. Mot. at 2-3.

As explained in detail, supra, Plaintiff's counsel's requested hourly rate is reasonable. The Court has also already determined that travel costs, generally, may be awarded as part of granting reasonable attorney fees and costs. As with Plaintiff's counsel's previous costs submission, however, there is insufficient detail for the Court to conclude that such fees were reasonably expended and related to the present litigation. More information is needed, and Plaintiff's counsel has until January 8, 2016 to submit that information to the Court. Again, a failure to submit the appropriate documentation will result in the denial of expenses claimed.

There is one additional issue: Plaintiff's counsel requests reimbursement for Plaintiff's travel expenses. See Ex. 2 to Suppl. Soumilas Decl. (claiming "Client Driving Reimbursement"). However, the logic underlying Plaintiff's counsel's recovery of travel expenses — that it is an out-of-pocket expense typically charged to a fee-paying client — is inapplicable to the client's travel expenses, because such costs are typically incurred by the client in the first instance, and would not show up on an attorney's bill. See Calderon v. Witvoet, 112 F.3d 275, 276 (7th Cir. 1997) (holding client's travel costs are not reimbursable as part of an award for attorney fees "because the expense of a litigant's travel does not appear on an attorney's bill."). Therefore, to the extent that Plaintiff's counsel's request for travel expenses encompasses costs attributed to Plaintiff's travel, not his counsel's, that request is denied.[13]

### III. CONCLUSION

Plaintiff's motions for attorney fees (Dkts. 61, 67) are granted in part and denied in part, as explained above. Plaintiff has until January 8, 2016 to file a supplemental submission regarding the deficiencies described above; Defendant may file a response within one week after

---

[13] The same is true regarding travel expenses submitted in connection with Plaintiff's original fee petition. As already indicated, the expense sheet submitted by Plaintiff's counsel in support of the original request for costs fails to spell out in detail the reason for each charge, aside from the event prompting it.

the filing of Plaintiff's supplemental submission. Each submission is limited to five pages, exclusive of attachments. An order with the precise amount of attorney fees and costs to be awarded in this matter will be issued after receipt of any further submissions.

SO ORDERED.

Dated: December 28, 2015       s/Mark A. Goldsmith
Detroit, Michigan      MARK A. GOLDSMITH
     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 28, 2015.

     s/Karri Sandusky
     Case Manager